IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>  v.<br><br>LAWRENCE R. GOLDFARB and BAYSTAR CAPITAL MANAGEMENT, LLC,<br><br>    Defendants. | No. C 11-00938 WHA<br><br>**ORDER FINDING DEFENDANTS IN CIVIL CONTEMPT** |

## INTRODUCTION

In this enforcement action, the Commission seeks an order holding defendants in civil contempt for failure to comply with a final judgment entered in this action. For the reasons stated below, defendants are found to be in civil contempt of the final judgment. Remedial sanctions are ordered.

## STATEMENT

On March 1, 2011, the Commission filed its complaint against defendants Lawrence R. Goldfarb and Baystar Capital Management, LLC, alleging that defendants took $12 million in proceeds from an investment under their management called Island Fund I, LLC, and, rather than return the proceeds to their investors, misappropriated the proceeds for their own use and other investments. As of the time of the filing of the complaint, defendant Goldfarb was the sole managing member of Baystar. On the day the complaint was filed, the Commission also filed the written consents of defendants to the entry of the proposed final judgment against them.

Final judgment entered on March 16, 2011. On April 25, 2012, the Commission filed an application for an order to show cause why defendants should not be held in civil contempt for failure to satisfy the final judgment. The order to show cause issued. A briefing schedule and hearing on the order to show cause was set. Following full briefing and a hearing, this order concludes that defendants are in civil contempt of the final judgment. The relevant facts are as follows.

### 1. FINAL JUDGMENT.

Final judgment entered on March 16, 2011, pursuant to the consents of defendants Goldfarb and Baystar (Dkt. Nos. 6, 7, 21). The judgment requires that defendants pay, in a series of installments, disgorgement of $12,112,416 and pre-judgment interest of $1,967,371, within one year of entry of judgment. Defendant Goldfarb was also ordered to pay a $130,000 civil penalty (Dkt. No. 21). Defendants have made three payments due under the judgment in the amounts of $30,000, $25,000, and $25,000, plus interest, on March 24, 2011, June 14, 2011, and December 13, 2011, respectively (Dkt. Nos. 23, 24, 25). Defendants have failed to pay the $1.025 million payment due on September 15, 2011, or the balance due on March 15, 2012. Defendant Goldfarb has failed to pay the $130,000 civil penalty. The total amount of disgorgement (including pre-judgment interest) unpaid by defendants is $13,983,094, plus post-judgment interest.

### 2. DEFENDANTS' ASSETS AND ATTEMPTS TO ASSIGN AND SELL.

According to the declaration of defendant Goldfarb, defendant Baystar has no assets and has not had any income since the entry of judgment. Defendant Goldfarb's primary asset is a 100% investment interest in LRG Capital LLC, which owns 100% of LRG Capital Real Estate Ventures, LLC, which through another entity Magna REM, owns an interest in a real estate fund, Magna Real Estate Partners LLC, which in turn holds a number of income-producing commercial properties in the San Francisco Bay Area. Defendant's interest in the real estate fund is, according to him, worth approximately $11 million, as of January 2012 (Goldfarb Decl. ¶¶ 6, 9).

2

By way of declaration, defendant explains the steps he took to sell his interest in the real estate fund. He requested that the managing partner and other partners of Magna REM agree to sell the assets of Magna and distribute the proceeds of these sales. They have not agreed to do so. He requested that other partners in Magna REM buy his interest "at fair value." Partners in Magna REM offered defendant "$7.6 million to be paid over a seven year period," for his interest. Because defendant Goldfarb "did not believe that this offer was adequate in terms of amount or term," he rejected it. Nonetheless, he states he is "prepared to accept this offer if the Court and the SEC so instruct." Defendant also offered to assign his interest in Magna to the Commission, but the Commission refused to accept. Apparently defendant has also been unable to find an outside party to purchase his interest for an "appropriate amount" (Goldfarb Decl. ¶¶ 10, 11, 34).

Defendant Goldfarb's next largest asset is a promissory note from Pyramid Interactive, Inc., d.b.a. OM Records, to his company LRG Capital, LLC, in the principal amount of $1.24 million, plus interest, for a total amount due of approximately $1.5 million. According to the terms of the promissory note, OM was to repay the note in full and with interest before June 30, 2011. Defendant claims he planned to use these funds to make the $1.025 million September payment due on the judgment. OM failed to repay the note. In March 2011, LRG Capital Group, LLC, filed a lawsuit to enforce the OM note. That suit is pending. Defendant Goldfarb has offered to assign his rights under the OM note to the Commission. The offer was rejected (Goldfarb Decl. ¶¶ 13, 15, 16, 38).

Through LRG Capital, LLC, defendant Goldfarb's company, he owns warrants in OM that he believes are worth $350,000 to $400,000. These warrants are also part of the pending lawsuit against OM. Defendant also has an investment in LRG Cascade, LLC, which is a fund that invests in distressed debt. Defendant believes his investment is worth $60,000 to $65,000. These funds will be paid to defendant when the fund manager receives payment on the distressed debt. Defendant also owns warrants, through Baystar Capital III Investment Fund, L.P., in GlassHouse Technologies, Inc, which he believes are worth approximately one million dollars.

He claims to have requested that GlassHouse purchase the warrants, but he has not yet received an offer (Goldfarb Decl. ¶¶ 16, 18, 19).

Defendant Goldfarb's home is worth between two million dollars and $2.5 million. He is in default on the mortgage. The mortgage debt is $1.9 million and there are additional liens against the property in excess of $500,000. Defendant's primary automobile is a 1993 Land Rover, which he claims is worth less than $5,000. He has several other automobiles, collectively worth over $50,000. Defendant also owns a boat valued at $30,000. Defendant has apparently listed his automobiles (except for the Land Rover) for sale but has not received offers. Defendant has less than $2,000 in liquid funds (*id*. ¶¶ 20, 21, 22, 23).

Since March 16, 2011, defendant has received in his personal and corporate accounts approximately $1.4 million. He received $250,000 from Magna REM in management fees, approximately $160,000 from Island Fund, in distributions from that entity, and approximately $500,000 in distributions from LRG. Between March and July 2011, he made nine transfers totaling $346,000 from an account at Morgan Stanley to LRG Capital Group, an entity he solely controls. He also received approximately $46,000 from payment of a loan he made to a band. The Commission has identified another $146,000 in unknown deposits to accounts for LRG Capital Group and its affiliates (Schneider Decl. ¶¶ 19, 20, 21).

### 3. MONEY SPENT SINCE ENTRY OF FINAL JUDGMENT.

Since entry of final judgment, defendant Goldfarb spent approximately $600,000 paying "various expenses of [his] business," including payroll, rent, accounting, attorney's fees, office expenses and supplies, utilities, and travel. While defendant has submitted bank account statements reflecting various charges, defendant's submissions do not show what was purchased. According to defendant, he has "now eliminated" most of his business expenses as he closed his office, terminated his employees, and works from home. Additional funds were also spent on "LRG Capital Investments, including LRG Mortgage, LRG Cascade and Sessionex, totaling approximately $150,000" (Goldfarb Decl. ¶ 27).

Defendant has paid approximately $139,000 toward his mortgage, including delinquent payments, and $40,000 in payments to his ex-spouse for child support (*id*. ¶¶ 28–31).

4

Defendant has spent close to $300,000 on personal luxury expenses since entry of final judgment. On March 29 and August 15, 2011, his American Express card was charged $21,500 and $21,500, respectively, "for the seats [his] company has owned for the Golden State Warriors basketball team. These amounts were for tickets [he] ordered in 2010 for the 2011 NBA basketball season. Since [he] had not paid in advance for these tickets as required the Warriors charged [his] AMEX card for the amounts due" (Goldfarb Decl. ¶ 33). On March 20, 2012, defendant *renewed* his season tickets for the 2012 season. The "prebill" shows $79,100 as the amount due (Schneider Decl. ¶ 18; Exh. B at SEC-WAR-000010).

In April 2011, defendant twice chartered a propeller plane. This resulted in a $17,357.77 charge to his American Express card in June 2011, and a $13,455,77 charge to his card in December 2011. In September 2011, defendant paid between $15,000 and $17,000 from his Circle Bank Account to charter a plane for a vacation (Schneider Exh. A at 261–62).

On March 25 and April 4, 2011, defendant Goldfarb paid from his bank account $39,550 and $9,888, respectively, to Marin International Yacht Sales for him "and other friends renting a friend's boat and his crew for a previous vacation" (*id*. ¶ 33).

Defendant Goldfarb also took numerous trips between March 2011 and May 2012, and stayed at luxury hotels, running up charges on his American Express card. For example, he stayed at luxury hotels in: Palm Springs, incurring charges of $4,024, $607, $6,178, in hotel bills, Beverly Hills, incurring charges of $4,047 and $2,043 on hotels, and in Sonoma, incurring a charge of $1,233 for a hotel stay (Schneider Decl. ¶ 4).

In November 2011, defendant Goldfarb hosted an engagement party for himself and his fiancé at his San Anselmo home. His American Express card reflects engagement party expenses totaling $11,666 (Schneider Exh. A at 295–96; Exh. 21).

Defendant declares that many of these charges "were incurred prior to the default on the September payment and were made in good faith in full belief the September payment would be made through the revenue from the OM note" (Goldfarb Decl. ¶ 33).

Defendant recently obtained employment in a consulting position to supplement his income and is actively seeking other consulting positions (*id*. ¶ 36).

5

### 4. ORDER TO SHOW CAUSE.

On May 23, 2012, a hearing was held on defendants' motion for relief from the order requiring immediate payment of unpaid amounts under the final judgment in this action, the Commission's cross application for an order to show cause why defendants should not be held in contempt, and the Commission's request for appointment of a receiver. Defendants were ordered to show cause why a judgment of civil contempt should not be issued against each of them for failure to comply with the final judgment's disgorgement payment provision.

## ANALYSIS

Federal courts have the power to enforce compliance with their orders. One way is through holding a party in civil contempt. *Int'l Union v. Bagwell*, 512 U.S. 821, 831 (1994). A party seeking civil contempt "has the burden of showing by clear and convincing evidence" that the alleged contemptor violated "a specific and definite order of the court." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999). A party should not be held in contempt if its actions "appear[] to be based on a good faith and reasonable interpretation" of a court order. *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982). A party may defend against a finding of contempt by demonstrating that it has "substantially complied" with the court order. *United States v Bright*, 596 F.3d 683, 690 (9th Cir. 2010).

If the party seeking civil contempt makes a prima facie showing that a defendant did not comply with the judgment, the burden of production shifts to the defendant to show inability to comply with the judgment. *United States v. Rylander*, 460 U.S. 752, 757 (1983). To satisfy this burden, a defendant must show "categorically and in detail" why it was unable to comply. *NLRB v. Trans. Ocean Export Packing, Inc.*, 473 F.2d 612, 616 (9th Cir. 1973). A defendant cannot avoid civil contempt if its inability to pay was self-induced. *United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980). If a defendant makes a showing of their inability to pay, the burden shifts back to the party seeking civil contempt.

### 1. FAILURE TO COMPLY WITH JUDGMENT.

The final judgment requires defendants to pay $12,112,416 in disgorgement and $1,967,371, in pre-judgment interest, totaling $14,079,787, plus post-judgment interest. They

are jointly and severally liable for this amount. Defendant Goldfarb is separately liable for a civil penalty in the amount of $130,000. The following payment schedule was ordered:

1.  $30,000 plus post-judgment interest within 10 days;
2.  $25,000 plus post-judgment interest within 90 days;
3.  $1,025,000 plus post-judgment interest within 180 days;
4.  $25,000 plus post-judgment interest within 270 days; and
5.  The remainder, plus post-judgment interest and defendant Goldfarb's civil penalty within 365 days.

There is no dispute that defendants failed to pay the $1.025 million payment due in September 2011 and the final payment due in March 2012, or that defendant Goldfarb failed to pay the $130,000 civil penalty. The total amount of disgorgement, including pre-judgment interest, still owed is $13,983,094, plus post-judgment interest.

Defendants argue, however, that the Commission has not shown by clear and convincing evidence that they violated the judgment. They argue that because defendant Goldfarb made a "timely offer to assign all of his assets . . . which would have substantially if not fully satisfied the Judgment" defendants have not violated the judgment (Opp. 6). Not so.

Defendant Goldfarb's attempt to satisfy the judgment by assigning illiquid interests in Magna and the OM promissory note does not amount to substantial compliance with the final judgment. Defendants had a year to liquidate assets. They failed to do so. In fact, defendant Goldfarb turned down an offer of $7.6 million to buy his interest in Magna (Goldfarb Decl. ¶ 11).

At minimum, failure to accept the $7.6 million offer, which would have satisfied approximately half of the final judgment, shows a lack of good faith to substantially comply with the judgment. This order also notes that while defendant Goldfarb has recounted, by way of declaration, his efforts to assign or sell various of his assets, the record does not include documentation of any of these efforts.

Defendants have paid only $80,000 plus interest in satisfaction of the final judgment requiring payment of more than $14 million. Defendants have violated the judgment.

7

### 2. NO SHOWING OF INABILITY TO COMPLY WITH FINAL JUDGMENT.

Because defendants violated the final judgment, the burden shifts to them to show they made a good faith reasonable effort to comply with the final judgment. *United States v. Drollinger*, 80 F.3d 389, 393 (9th Cir. 1996). Defendants must show "categorically and in detail" why they were unable to comply. *NLRB*, 473 F.2d at 616.

The record is clear that, at least since entry of the final judgment in March 2011, defendant Goldfarb has spent hundreds of thousands of dollars on various personal indulgences, instead of paying down the outstanding balance on the final judgment. In March 2012, after defendants failed to satisfy the final judgment, defendant Goldfarb renewed his Warriors season tickets, costing $79,100. This was in addition to $21,500 defendant charged in March 2011 and again in August 2011 for Warriors tickets for the 2011 season. Defendant also rented a Luxury Suite for a Warriors game in April 2011, costing $5,000 (Schneider Exh. B).

Defendant Goldfarb spent approximately $31,000 on two charter flights taken in April 2011. He spent another $15,000 to $17,000 on a charter flight taken in September 2011. In March 25, 2011 and April 4, defendant Goldfarb paid from his bank account approximately $50,000 for chartering a yacht (Schneider Exh. A at 299–305, 262; Exhs. 24–25).

Defendant Goldfarb spent more than $15,000 to pay for stays at various luxury hotels between March 2011 and May 2012. In addition, he also testified to staying at a vacation home in Stinson beach for 21 nights in August 2011, for a grand total of approximately $14,000. What is more, the month final judgment entered, defendant went on an $8,000 shopping spree at Pottery Barn (Schneider Exh. A at 198–99).

To be sure, the record includes additional personal expenses made by defendant on luxury items since the date final judgment entered. But there is no need to recount every such expense. The point is made. Instead of paying down money owed on the final judgment, defendant Goldfarb chose to continue to support his luxurious lifestyle. Defendants did not make a good faith effort to comply with the final judgment. Thus, this order finds defendants Goldfarb and Baystar to be in civil contempt of the final judgment.

8

### 3. REMEDIAL SANCTIONS.

The purpose of civil contempt is to coerce compliance with the court's order rather than punish disobedience. *Spallone v. United States*, 493 U.S. 265, 280 (1990). Because defendants are in civil contempt of the final judgment, remedial sanctions may be imposed against them until they purge themselves of the contempt by making their payments. *Shillitani v. United States*, 384 U.S. 364, 370–71 (1966).

The Court has already imposed a monthly spending limit on defendant Goldfarb. He shall not spend more than $10,000 per month; this limit includes debts incurred. In addition to this $10,000 limit, defendant may pay up to $6,000 per month in attorney's fees, without prejudice to the firm accruing larger unsecured indebtedness (Dkt. No. 46 at 10). These spending conditions remain until lifted by further Court order.

The court may also appoint a receiver to identify and take control of all of defendants' income and assets and to use all available assets to pay down the final judgment. *SEC v. Wenke*, 622 F.2d 1363 (9th Cir. 1980). All parties agree that a receiver should be appointed. A receiver will be appointed. As stated at the hearing, however, the Commission is instructed to make a diligent effort to secure a rate lower than $395 per hour, which is the rate that the proposed receiver has stated he will charge for work performed in this case. By **NOON ON JUNE 28, 2012**, the Commission shall notify the Court of its recommendation for a receiver and the hourly rate that will be charged by the receiver. Please also file a revised proposed order for appointment of a receiver.

District courts in recent enforcement actions by the Commission have imposed incarceration to force defendants to comply with a court order to pay disgorgement and surrender funds. *See SEC v. Solow*, 2010 U.S. Dist. LEXIS 10561 at *62 (S.D. Fla. 2010); *SEC v. Cook*, Case No. 09-cv-03333-MJD-JJK, Memorandum Opinion and Order at 27–29 (D. Minn. 2010). The Commission does not seek an incarceration order at this point but recommends that one can be imposed in the future, if necessary. At this time, an incarceration order will not issue.

United States District Court
For the Northern District of California

9

# CONCLUSION

For the foregoing reasons, defendants are found to be in civil contempt of the final judgment. As stated, remedial sanctions are imposed.

**IT IS SO ORDERED.**

Dated: June 20, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

10