United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>LAWRENCE R. GOLDFARB and BAYSTAR CAPITAL MANAGEMENT, LLC,<br><br>Defendants.<br>_____ / | No. C 11-00938 WHA<br><br>**ORDER GRANTING RECEIVER'S MOTION TO APPROVE THE SALE OF RECEIVERSHIP ESTATE'S INTEREST IN MAGNA REAL ESTATE MANAGEMENT LLC** |

**INTRODUCTION**

In this SEC enforcement action, a receiver was appointed to sell defendants' assets. The receiver moves to approve the sale of the receivership estate's largest asset, an interest in a limited liability corporation. For the reasons stated below, this motion is **GRANTED**.

**STATEMENT**

In March 2011, judgment was entered in an SEC enforcement action against defendants Lawrence Goldfarb and Baystar Capital Management, LLC in an amount of over $14 million (Dkt. No. 21). In June 2012, defendants were held in civil contempt for failing to comply with the judgment (Dkt. No. 50). John Cotton was then appointed receiver of defendants' estate in order to "facilitate the marshaling of their assets and income to help comply with the Final Judgment" (Dkt. No. 53). Pursuant to paragraph 35 of the order appointing receiver, the receiver must seek leave from the court to sell "all property, promissory notes, partnership interests,

limited liability company interests, and/or warrants in the Receivership Estates." In this motion, Receiver Cotton seeks approval to sell Goldfarb's largest asset, an interest in the real estate company Magna Real Estate Management LLC (MREM).

MREM is a California limited liability company, formed in 2008. It is owned by LRG Capital Real Estate Ventures, LLC (LRG), Jeff Koblick, and Richard Hall. LRG owns 50% of MREM. Koblick and Hall each own 25% (Cotton Decl. ¶ 3). Goldfarb is the sole owner of LRG (Cotton Decl. ¶ 2). MREM and twenty additional investors own Magna Real Estate LLC (MRE). MREM, which is managed by Koblick and Hall, is the asset manager of MRE. MRE has varying percentages of ownership interests in eight real estate properties throughout California (Cotton Decl. ¶ 7).

In July 2012, the receiver began negotiations to sell LRG's interest in MREM to MRE. Whether the price they settled on is fair and adequate is the subject of the instant dispute. The receiver retained Keyser Marsdon, a professional advisory firm in San Francisco, to make a preliminary evaluation of the interest. Keyser determined that LRG's interest was worth at minimum approximately $8.8 million, and possibly more (Cotton Decl. ¶¶ 10–13). After multiple rounds of negotiation with the receiver, MRE agreed to buy LRG's interest for $5.1 million, a significantly lower amount than the appraised value (Cotton Decl. ¶ 25; Dkt. No. 94-1).

Receiver Cotton seeks approval to sell the asset at this reduced price. As was discussed at the August 15 hearing, Receiver Cotton has been in contact with the two largest defrauded investors — two hedge funds — who together owned 83% of the funds. Both have given their approval of the sale, prioritizing a lower but immediate cash payment over an uncertain future payout. Based on receiver's representations during the hearing, the other 17% of defrauded investors are on notice of the proposed sale, and none have objected.

Defendants Goldfarb and Baystar Capital Management are the only objectors, arguing that the sale price is "dramatically below the value of" the interest (Opp. at 3). To further assess the fairness and reasonableness of the offer, the Court requested supplemental briefing from both parties (Dkt. No. 112). At the August 15 hearing, the receiver was ordered to meet again with

2

the proposed buyers and submit a final proposal. On August 20, the receiver submitted a revised, final proposal from MRE for $5.5 million. For the reasons stated below, the motion to approve the sale of the receivership estate's interest in MREM for the revised price of $5.5 million is **GRANTED**.

## ANALYSIS

According to the order appointing Receiver Cotton, "upon further order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell . . . limited liability company interests . . . in the Receivership Estates" (Dkt. No. 58, ¶ 36). Section 2004 governs the "sale of personalty generally." It states that "any personalty sold under any order or decree of any court of the United States shall be sold in accordance with section 2001 of this title, unless the court orders otherwise." Section 2001 sets out two possible courses of action: (1) property may be sold in public sale; or (2) property may be sold in a private sale, provided that three separate appraisals have been conducted, the terms are published in a circulated newspaper ten days prior to sale, and the sale price is no less than two-thirds of the valued price. At issue here is whether this Court should use its statutorily granted discretion and approve a private sale that does not comply with the dictates of Section 2001.

"A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad. It is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986) (citations and internal quotation marks omitted). While our court of appeals has not specifically discussed this discretion with respect to Section 2001, the Third Circuit has held that the statutory scheme set out in Sections 2001 and 2004 expresses a "preferential course to be followed in connection with a court authorized sale of property and that the district court should not order otherwise except under extraordinary circumstances." *Tanzer v. Huffines,* 412 F.2d 221, 222 (3d Cir. 1969). The price for which the asset is sold should be the "best price under the circumstances." *Id.* at 223.

According to Cotton, this price, although below its appraised value, is warranted and is the best price possible under the circumstances for many reasons. *First*, the structure of MREM and MRE would require the approval of MREM managers to sell what amounts to a non-controlling and restricted interest that is not easily assignable to any third party (Dkt. No. 93, Exh. C, § 7.1(a); Reply Br. at 4). Such a structure limits the viability of a public sale, making this sale to MRE investors the only way to quickly terminate the LRG interest in MREM. *Second*, the two largest of the defrauded investors approve the sale at the reduced price. *Third*, if the sale is approved, Koblick and Hall have agreed to dismiss their breach of contract and fraud claims against defendants in Marin County Superior Court, which are currently stayed but could result in a further judgment against the estate. *Fourth*, the SEC does not object to the sale. *Fifth*, approving this sale would close out the receivership and eliminate the economic uncertainty that could come with waiting until this asset could otherwise be sold in three to five years (Dkt. No. 93).

According to defendants, this does not represent the best price under the circumstances, and the receiver has not made sufficient effort to garner a higher price. Defendants argue that the Court should order the receiver to obtain a full and complete appraisal of the interest, publicly market the interest for sale for a reasonable period, or negotiate a more appropriate price with a private buyer. According to defendant, the receiver has made no effort to sell to anyone except the "insiders" of the fund, who benefit from a lower price (Opp. at 6).

After supplemental briefing, a full hearing, and the receipt of a subsequent revised (and higher) offer, this order finds that the proposed price of $5.5 million is the best price under the circumstances. As will be discussed below, it has already proven difficult to negotiate a private sale for this asset. Because of the structure of the asset, it would be very difficult to sell this large but non-controlling interest in MREM in a public sale as well. Defendant Goldfarb himself found this to be true as well. In his declaration submitted in opposition to the civil contempt order, Goldfard stated that "I have also been unable to find an outside party to purchase my interest at an appropriate amount." He directly acknowledged that the "marketability of the interest is limited" (Dkt No. 44-1, ¶ 12).

4

This order further finds that this price is the product of good faith efforts by Koblick and Hall to find a buyer for the interest, and to negotiate with receiver when a private buyer failed to materialize. Koblick, in his position as manager of MREM and the asset manager of MRE, made multiple attempts to secure a third party buyer for Goldfarb's interest in MREM. The first was in February 2012, when he reached out to an institutional investor. Despite these efforts, Goldfarb and the investor were not able to come to an agreement (Supp. Koblick Decl. ¶¶ 4–6). In March 2012, prior to Goldfarb's civil contempt hearing, Goldfarb rejected Koblick and Hall's offer to buy his interest in MREM for $7.6 million (Goldfarb Decl. ¶ 11, Dkt. No. 44-1 ).

After the receiver was appointed in June 2012, Koblick made a second effort to come to an agreement with the same institutional investor, but no agreement was reached (Supp. Koblick Decl. ¶ 7). Koblick made many more attempts to contact investors, to no avail. It then became necessary to negotiate an agreement in which Koblick, Hall, and the MRE shareholders could buy out LRG's interest and "clear this cloud on MRE ownership" (Supp. Koblick Decl. ¶ 3). The receiver and the buyers went back and forth multiple times to come to this agreement (Cotton Decl. ¶¶ 15, 21–25). Pursuant to the Court's order at the August 15 hearing, the receiver obtained and filed herein MREM's "best and final offer" of $5.5 million (Dkt. No. 120). Obtaining another appraisal and attempting a public sale would be done at cost to the receivership and would likely be futile, possibly even attracting a lower price than that offered by the MRE investors today.

Additionally, the defrauded investors approve of the sale at a reduced price. According to the receiver's representations, he actively communicated with the two large hedge funds which owned 83% of the defrauded funds during the course of negotiations. Both approved the sale. Cotton made efforts to ascertain the identity of other defrauded investors, and has informed them of this proceeding. No objections have been submitted.

Along with the revised offer of $5.5 million, the receiver submitted the declaration of Anthony Martorana of Martorana Bohegian & Company. Mr. Martorana is a real estate consultant and appraiser who prepared a summary regarding the "general effective discounts for membership interests" such as the one at issue here (Dkt. No. 120 at 4). He states that, based on

5

the lack of control and marketability of the asset, a 24–33% "overall effective discount is appropriate with an average discount of 28%" (*ibid.*). The proposed price of $5.5 million is an approximately 31% discount from the appraised value of the MRE properties of $8,034,028 (*id.* at 2).

This order recognizes that the interest is being sold below its valuation, and Goldfarb will likely be left with a multi-million dollar deficiency as a result. This is a legitimate concern that this order has carefully considered. But it is the duty of this Court to weigh the interests of the defrauded investors with those of the defendants and to ensure that the price received under the circumstances is fair and reasonable. The interest has not proven to be, and by its terms is likely not, publically marketable. Multiple past attempts at private sale have been unsuccessful. Keeping the receivership open would incur additional expense, likely with little or no benefit. Given these circumstances, this order finds that it is in the best interests of all parties to approve this sale according to the revised proposal set forth by the receiver.

## CONCLUSION

For the reasons discussed above, the receiver's motion to approve the receivership estate's interest in Magna Real Estate Management LLC at the revised amount of $5.5. million is **GRANTED**.

**IT IS SO ORDERED.**

Dated: August 21, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE